Lu v Hulme 062212
----------------------------------------------

FILED
IN CLERKS OFFICE

2012 JUN 22 P 12: 37

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Friedrich Lu, Plaintiff            )     Civil Action No
     v                             )
George Hulme,                      )
Trustees of Boston Public Library, Defendants     )

### VERIFIED COMPLAINT

(1) The court has subject matter jurisdiction over this matter under 28 USC § 1331 (federal question).

(2) Both defendants are sued in their official capacity. In addition, George Hulme is also sued in his individual capacity.

(3) Trustees of Boston Public Library (BPL) is a body corporate under Massachusetts state law,

Acts of 1878, Chap 114 (last amended 2006)
http://www.bpl.org/general/trustees/act.htm

, and in part funded by the state. See, eg,

Appropriation for the Fiscal Year 2011 to Provide Supplementing Certain Existing

Appropriations

and for Certain Other Activities and Projects. Acts of 2010, Chap 409.
http://www.malegislature.gov/Laws/SessionLaws/Acts/2010/Chapter409

To sum up, both defendants are state actors in regard to Count One.

(4) Founded in 1848 and "the first publicly supported free municipal library in the world"
http://www.bpl.org/general/firsts.htm

as well as "the library of last recourse for reference and research services for the

commonwealth" Mass Gen Laws, Chap 78, § 19C, BPL is both federal and United Nations

depositories.

Policies & Procedures, Collection Development and Management Policy. BPL, undated.
http://www.bpl.org/general/policies/collectiondev.htm
("The Boston Public Library is a depository for United Nations Publications")
(5) Warm and fuzzy accounts float around, showing BPL is "free to all," to a fault.

(i) Ric Kahn, Free to All.*  *These noble words hang over the Boston Public Library's entrance.

But some say the open-door policy may come at the expense of patrons' comfort and safety.

Boston Globe, June 15, 2008.
http://www.boston.com/ae/books/articles/2008/06/15/free_to_all/?page=full
(ii) Boston Public Library.
http://www.yelp.com/biz/boston-public-library-boston
(Staci M, June 11, 2012: five stars out of five; "Hands down, if I ever become homeless, I will adopt BPL and my daytime hideout as well")
(iii) Meeting of the Corporation and Administrative Agency. Trustees of the Public Library of the

City of Boston, Mar 9, 2010
http://www.bpl.org/general/trustees/trusteeagenda030910.htm
(public comment: "Urged the Trustees to * * * provid[e] safe haven to shelter the lonely and homeless")

(6) The fateful encounter, on June 13, 2012, lasted five minutes. There was no angry exchange--congenial on the part of George Hulme, if anything. (However, it was understood by all present--no other person was within earshot--at all time that if Lu did not comply then and there, a charge such as trespass would be lodged against Lu.) Rather Friedrich Lu was incredulous that access could ever be an issue. On the other hand, Hulme apparently was incredulous that Lu could have come into BPL with his belongings at all.

(7) Under penalty of perjury, Lu states the following.

(a) Shortly after 9 AM, Lu went to BPL through the Boylston entrance, his right hand pulling a carriage and left hand toting three plastic bags.

(i) Lu had taken the carriage with him for about two months by then. It was a carriage a grocery shopper might bring to a supermarket. Mine was 1 1/2 feet long, 1 foot wide and 1 yard tall, with two small wheels underneath and a n-shaped handle on the top. The body of the carriage is made of straight rods about 1/8 of an inch in diameter, whose content was visible.

(ii) The three bags in the left hand, just a quarter full each, were the size of plastic bags one sees in checkout lanes of a supermarket.

(b) It was raining. Lu readily concedes that the two paper grocery bags (almost empty, for they no longer could carry weight) of his were all wet and slumped atop the carriage. This could happen to anybody, though, with a paper bag (not just to the homeless) and should be

temporary.

(c) The lone security guard informed Lu that he should leave the carriage at the entrance (unguarded, of course) or he could not come in. If Lu insisted in coming in with the carriage, police would be called, the guard said. Lu appealed to his supervisor.

(d) Sight unseen, the supervisor agreed over the walkie talkie that Lu could not come in with a carriage. The guard said Lu would like the supervisor to arrive, and the latter obliged.

(e) Upon arrival, the supervisor (with two more security guard in tow) immediately re-affirmed the order of the first security guard.

He took a sweeping glance of Lu's belongings in the carriage and his left hand. In disbelief, he stammered, "You have come in with that?"

"Yes."

He declared, "It's all trash."

Lu asked, "How do you define trash?"

Instead of answering directly, he pointed to a transparent plastic bottle (not soda bottle) sitting in the carriage: "There is a bottle there."

I replied, "It is a water bottle. But I can leave it outside."

Gesturing it was unnecessary, the supervisor repeated, "Everything is trash."

Trying to be helpful, Lu explained, "I am homeless and have to carry everything on my back."

After a short pause, he found his voice: "What's in there? Clothes?"

"No. Legal paper [retrieving white sheets from one of the plastic bags in the left hand]."

Lu then inquired how he could make or re-arrange his belongings palatable to him--and get himself admitted with them.

The supervisor indicated it was not doable: "Not just you. Other homeless people can not come in with belongings."

An epiphany came to the supervisor, who remarked, "We had a homeless guy, who could not

come in with his belongings. He later found two suitcases and put everything in the suitcases. We then allowed him to come in with the suitcases."

I exclaimed, "It's impossible. Where can I find two suitcases?"

The supervisor was unmoved. Lu wanted to appeal to his* supervisor. The supervisor only said, "I will give you my name" and walked around to security desk to scribble.

One of the two security guard who came along kindly offered, "He is the top. Nobody is higher than he."

Lu said to no one in particular, "This probably violates state law."

"No, it does not," assured the same security guard.

The supervisor handed Lu the note, which read, "Mr. Hulme" (the period in original).

Lu requested first name, but was reminded it was time to go. It was raining outside.

(8) Thus Lu is effectively precluded from carrying any* belonging with him, if he wishes to enter BPL.

(9) Not having seen Hulme before, Lu had no idea who Hulme was. Afterwards Lu learned Hulme's first name, his title (BPL's "Coordinator of Shipping, Receiving & Security") and being a 2010 Henry L Shattuck Public Service Award recipient.

(10) On information and belief, through custom or usage BPL has quietly excluded, ejected the undesirable, not just Lu.

(11) On information and belief, BPL has not published notice or policy on admission, or instituted an appeal process when admission is denied.

(12) Defendants' actions imposes an undue burden on Lu's admission to BPL, and constitutes constitutionally impermissible classifications of persons for the purpose of admitting patrons: homeless or not; patrons with belongings in tote bags (paper or plastic) only; patrons with belongings in a carriage; and patrons with belongings in suitcases.

 (13) Count One (42 USC § 1983): Defendants under color of state statute, ordinance,

regulation, custom, or usage subjects Lu, or causes Lu to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution--namely First Amendment (petition clause--specifically physical access to a government building--and right to know) as well as Fourteenth Amendment (due process and equal protection clauses).

(14) Count Two (commonwealth civil rights statute: Mass Gen Laws Chap 12, § 11I):  11I. Lu's exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion of arrest by city police.

(15) Besides injunctive relief, Lu request jury trial on liability and damage. Lu also demands punitive damage, as defendants' conducts fly in the face of pertinent laws. Finally Lu asks for court costs.

Plaintiff: Friedrich Lu, pro se
Signed: *[signature]*
Date: June 21, 2012
Email address; x2flu@yahoo.com
Telephone number: none
Address: Pine Street Inn, 444 Harrison Avenue, Boston, MA 02118