UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRIEDRICH LU, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 12-11117-MLW |
| | ) |
| GEORGE HULME and TRUSTEES OF | ) |
| THE BOSTON PUBLIC LIBRARY, | ) |
| Defendants | ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                    March 30, 2013

I. SUMMARY

Pro se plaintiff Friedrich Lu brings this civil rights action
against defendants George Hulme and the Trustees of the Boston
Public Library (the "Trustees") pursuant to §1983 of the Federal
Civil Rights Act, 42 U.S.C. §1983, and §11I of the Massachusetts
Civil Rights Act, Mass. G.L. c.12, §11I. Lu, who is a homeless
person, alleges that his constitutional rights were violated when
he was refused entrance to the Copley branch of the Boston Public
Library (the "Library") with a wire shopping cart containing his
belongings (the "cart").

Lu has filed a motion for a temporary restraining order (the
"Motion for TRO") and a motion to disqualify the City of Boston Law
Department (the "Law Department") from representing defendants (the
"Motion to Disqualify"). Defendants have moved to dismiss this case
pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure
(the "Motion to Dismiss"). In addition, defendants have also filed
a motion for fees, costs and sanctions against Lu (the "Motion for

Sanctions") for his failure to abide by a court order issued by this court in 2002. Lu opposes defendants' motions and, in response, seeks attorney's fees and sanctions against defendants pursuant to Federal Rule of Civil Procedure 11 (the "Cross-Motion for Sanctions"). Lu's Motion for TRO, Motion to Disqualify and Cross-Motion for Sanctions are opposed.

For the reasons explained in this Memorandum: the plaintiff's Motion to Disqualify is being denied; the defendants' Motion to Dismiss is being allowed as to the claim of a violation of Lu's right to substantive due process under the Fourteenth Amendment and denied as to the remaining claims; the plaintiff's Motion for a TRO is being denied; and plaintiff's Cross-Motion for Sanctions is being denied. In addition, the defendants' Motion for Sanctions is being denied without prejudice. Lu is now being warned that any future violations of court orders or applicable rules may result in the imposition of sanctions against him, which may include dismissal of this case. In addition, Lu is being ordered to inform the court, by April 22, 2013, whether or not he requests the appointment of counsel to represent him in this complex suit. If so, the court will seek counsel to represent him pro bono, meaning without cost to Lu.

2

II. BACKGROUND

Except where otherwise indicated, the following alleged facts are derived from Lu's pro se complaint.

Lu, who is homeless, lives in Boston, Massachusetts. Defendant Trustees constitute a corporation consisting of nine "trustees of the public library of the city of Boston" who are appointed by the Mayor of Boston, and who are charged with "general care and control" of the Library and its branches. 1878 Mass. Acts c.114, §§1 & 5, as amended by 1887 Mass. Acts c.60, §1, and 1995 Mass. Acts c.157, §1. Defendant Hulme is Supervisor of Security, Shipping and Receiving of the Library.

On June 13, 2012, Lu went to the Library with his cart. See Compl. ¶6-7(a). The cart was one and a half feet long, one foot wide, and three feet tall, with two wheels and a handle at the top. Id. ¶7(a). It contained various items, including several paper grocery bags and a plastic bottle. Id. ¶¶7(b), (e). Lu also held some additional belongings in three plastic grocery bags in his hands, including various legal papers. Id. ¶6. It had been raining and Lu's belongings were wet. See id. ¶7(b).

Upon entering the building, Lu was informed by an unnamed security guard that he would need to leave his cart outside. See id. ¶7(c). The guard stated that if Lu came inside with the cart, he would call the police. See id.

Lu asked to speak with the guard's supervisor. See id. Hulme

3

arrived with two additional security guards and reiterated that Lu could not come inside the Library with his cart. See id. ¶7(e). Lu asked if he could gain admittance by rearranging his belongings to make them more "palatable." Id. According to the complaint, Hulme responded by stating that this was not possible and that "homeless people can not come in with belongings." Id. However, Hulme allegedly also told Lu that there had been "a homeless guy, who could not come in with his belongings [who] later found two suitcases and put everything in the suitcases. We then allowed him to come in with the suitcases." Id.

Lu asked Hulme's name and left the Library. See id. According to Lu, the encounter lasted five minutes and was "congenial," but it was "understood" that if plaintiff did not comply with the security personnel, he would be charged with trespass or something similar. Id. ¶6.

On June 21, 2012, Lu sued the Trustees in its official capacity, and sued Hulme in both his official and individual capacities. Id. ¶2. Lu asserts that he was deprived of his First Amendment right to access the Library, and his rights to due process and equal protection under the Fourteenth Amendment. Id. ¶¶13-14. As indicated earlier, Lu has moved for a temporary restraining order, presumably seeking to allow him to bring his cart and belongings into the Library while this lawsuit is pending. He has also filed a Motion to Disqualify defendants' counsel.

4

As was also stated earlier, defendants oppose Lu's motions and have moved to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6). In essence, defendants assert that plaintiff was prevented from entering the Library in accordance with its Appropriate Library Use Policy (the " Library Policy"), which they contend is a constitutionally valid regulation of the Library. They represent that the relevant language in the Policy prevents patrons from bringing non-assistive "wheeled devices" into the Library, including "shopping carts," as well as "garbage, articles with a foul odor, or articles which, alone or in their aggregate, impede the use of the library by other users." Library Policy, Boston Public Library, http://www.bpl.org/general/policies/acceptableuse (last visited Dec. 4, 2012). Lu opposes the Motion to Dismiss.

On December 20, 2012, defendants filed a Motion for Sanctions against Lu. Defendant's argue that Lu's failure to abide by a March 29, 2002 Order issued by this court in another case warrants sanctions. That Order required Lu to attach certain documents to any pleading, motion, complaint or other document that he files in the United States District Court for the District of Massachusetts. See Mar. 29 2002 Order, Lu v. Harvard School of Dental Medicine, No. 00-11492-MLW (D. Mass 2002), ECF No. 49 (the "2002 Order"). Lu has opposed the Motion for Sanctions and filed a Cross-Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. Defendants oppose Lu's Cross-Motion.

III. DISCUSSION

## A.   Lu's Motion to Disqualify is Not Meritorious

Lu contends that the Trustees constitute an independent entity, rather than a branch of the City of Boston, that Hulme is not an employee of the City, and that their representation by the City of Boston Law Department is improper.

A party may seek the disqualification of an adversary's counsel.   However, such disqualification is a "drastic measure." Adoption of Erica, 426 Mass. 55, 58 (1997). It should only be granted as "a measure of last resort" when necessary to assure "the ethical and orderly administration of justice." In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988).

Contrary to Lu's contention, the Library is a department of the City of Boston, at least for some purposes. The Library is sometimes referred to in state statutes as the Boston "library department." See, e.g., 1909 Mass. Acts c.486 (in amending the Boston City Charter, noting that the mayor and city council may abolish or reorganize city departments with certain exceptions, including the "library department"). The Library is similarly described as the "Library Department" in the Boston Municipal Code. See Boston, Mass., Code §11-8 (establishing the duties of the Trustees). The Massachusetts Supreme Judicial Court ("SJC") has also referred to the Library as the City's "library department." See Trustees of Pub. Library of City of Boston v. Sherrill, 263

Mass. 173, 177 (1928). The court, therefore, finds that the Library is a department of the City of Boston for the purposes of the Motion to Disqualify.

The Trustees constitute a municipal entity that oversees the Library as a department of the City of Boston. The Trustees are appointed by the Mayor. See 1994 Mass. Acts. c. 157; Boston, Mass. Cod. §2-7.1. The SJC has stated that the Trustees constitute a municipal entity, at least for certain purposes. For example, in Otis Elevator Company v. Long, the SJC called the Trustees "a corporation, and a department of the city of Boston," and concluded that contract claims relating to a Library building should be filed against the Trustees as the officer or board in charge of the department rather than against the Mayor of Boston. 238 Mass. 257, 265-66 (1921). Similarly, in City of Boston v. Dolan, the SJC stated that the Trustees constitute "in one sense a municipal agency," while also concluding that the City of Boston could not sue on the Trustees' behalf to recover stolen Library funds because as a corporation the Trustees held independent legal title to those funds. 298 Mass. 346, 351-52 (1937). Notably, the Law Department has represented that the Trustees in at least one case before the SJC. See Trustees of Pub. Library, 263 Mass. at 174 (Law Department represents Trustees in lawsuit concerning bequest to Trustees and Boston Public Library).

The Law Department is authorized by the Boston Municipal Code

7

to represent "boards in charge of departments" in "suits against them for their official actions, or for the performance of their official duties." The Trustees constitute such a board. Boston, Mass. Code §§1-1 a.9 & 5-8.1. Therefore, Lu's Motion to Disqualify with regard to the Trustees is not meritorious.

Hulme is an employee of the Library, who is sued in both his official and individual capacities based on the same conduct. The Law Department's representation of him in both capacities presents no evident ethical issues. Therefore, granting the Motion to Disqualify the Law Department from representing Hulme is also not meritorious. See In re Grand Jury Proceedings, 859 F.2d at 1026.

In view of the foregoing, the Motion to Disqualify is being denied.

## B.   The Motion to Dismiss All of Lu's Claims is Not Meritorious

Defendants have moved to dismiss all of Lu's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief may be granted. This contention is incorrect with regard to all except Lu's claim for a violation of his right to substantive due process under the Fourteenth Amendment.

### 1.   The Applicable Standards

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz

8

v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); see also
Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). The court
must "neither weigh[] the evidence nor rule[] on the merits because
the issue is not whether plaintiffs will ultimately prevail, but
whether they are entitled to offer evidence to support their
claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75
(D. Mass. 1996). A motion to dismiss should be denied if a
plaintiff has shown "a plausible entitlement to relief." Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007); see also
Morales-Tañon v. Puerto Rico Elec. Power Auth., 524 F.3d 15, 18
(1st Cir. 2008) (applying the Bell Atlantic standard to a claim
under 42 U.S.C. §1983).

        As Lu is proceeding pro se, this court must "'liberally
construe[]" his complaint. Erickson v. Pardus, 551 U.S. 89, 94
(2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see
also Hughes v. Rowe, 449 U.S. 5, 9 (1980); Instituto de Educacion
Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23
(1st Cir. 2000). Where a pro se plaintiff presents sufficient
facts, "the court may intuit the correct cause of action," even if
the claim was imperfectly pleaded. Ahmed v. Rosenblatt, 118 F.3d
886, 890 (1st Cir. 1997).

        Ordinarily, a court will not consider documents outside of the
pleadings in a motion to dismiss. See Rivera v. Centro Medico de
Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Watterson v. Page,

987 F.2d 1, 3 (1st Cir. 1993). From this rule, the First Circuit makes a "narrow exception for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3-4; see also Beddal v. State St. Bank & Trust, Co., 137 F.3d 12, 16-17 (1st Cir. 1998) (When "a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). Recently, the First Circuit has reiterated this standard, writing that in deciding a motion to dismiss a court "can consider (a) 'implications from documents' attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,' and (c) 'concessions' in plaintiff's 'response to the motion to dismiss.'" Schantz v. Republican State Leadership Committee, 669 F.3d 50, 55-56 (1st Cir. 2012) (quoting Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

## 2.   The First Amendment Claim

Lu alleges that his exclusion from the Library violated his federal rights to receive information under the First Amendment. His complaint states a plausible First Amendment claim.

Lu has a First Amendment right to access the Library. The

10

First Amendment "protects the right to receive information and ideas." Stanley v. Georgia, 394 U.S. 557, 564 (1969); see also Martin v. City of Struthers, 319 U. S. 141, 143 (1943). Although neither the Supreme Court nor the First Circuit has decided the issue, many courts have recognized that the "right to receive information 'includes the right to some level of access to a public library, the quintessential locus of the receipt of information.'" Neinast v. Bd. of Trs. of Columbus Metro. Library, 346 F.3d 585, 591 (6th Cir. 2003) (quoting Kreimer v. Bureau of Police for the Town of Morristown, 958 F.2d 1242, 1255 (3rd Cir. 1992)); see also Doe v. City of Albuquerque, 667 F.3d 1111, 1129 (10th Cir. 2012); Armstrong v. Dist. of Columbia Pub. Library, 154 F. Supp. 2d 67, 75 (D.D.C. 2001).

A public library is often deemed to be a designated public forum. See City of Albequerque, 667 F.3d at 1128-30; Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1256-65 (3d Cir. 1992); Armstrong, 154 F.Supp.2d at 75; Brinkmeier v. City of Freeport, No. 93-20039, 1993 WL 248201, *3-*6 (N.D.IL Jul. 2, 1993). In a designated public forum, content neutral time, place and manner restrictions on protected First Amendment rights are permissible if "they are narrowly tailored to serve a significant governmental interest, and . . . they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); see also City of

11

Albuquerque, 667 F.3d at 1130-31; Kreimer, 958 F.2d at 1262-65; Armstrong, 154 F. Supp. 2d at 75-77. A library "is obligated only to permit the public to exercise rights that are consistent with the nature of the Library and consistent with the government's intent in designating the Library as a public forum." Kreimer, 958 F.2d at 1262; see also Neinast, 346 F.3d at 591. Therefore, even though the property has been "dedicated to some First Amendment uses . . . regulation of the reserved nonpublic uses" must only be reasonable and not viewpoint based. United States v. Kokinda, 497 U.S. 720, 730 (1990); see also Cornelius v. NAACP Legal Defense and Educ. Fund, Inc., 473 U.S. 788, 804-06 (1985); Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983); Neinast, 346 F.3d at 591-92; Kreimer, 958 F.2d at 1262-65.

Within this framework, regulations limiting permissible activities or conduct in a library are generally reviewed under a reasonableness standard as part of the government's authority to designate the forum for its intended purposes of reading, writing and quiet contemplation. See Kreimer, 958 F.2d at 1262-63; Brinkmeier, 1993 WL 248201, at *1.[1]

---

[1] In some cases a public library has been held to be a limited public forum and, therefore, a different standard of review of regulations has been applied. See e.g., Neinast, 346 F.3d at 590-95; Sund v. City of Wichita Falls, Tex., 121 F. Supp. 2d 530, 563-68 (N.D.Tex. 2000). In deciding the instant Motion to Dismiss, the court is not deciding whether the Library is a public or a limited public forum. That issue will, if necessary, be decided on a motion for summary judgment or at trial.

In their Motion to Dismiss, defendants assert that plaintiff was barred from entering the Library with his cart and belongings under two parts of what it represents in its Motion to Dismiss to be the Library Policy which, it says, prohibits "[b]ringing in garbage, articles with a foul odor, or articles which, alone or in their aggregate, impede the use of the library by other users," and "[u]sing wheeled devices in Library property or on Library grounds, except in designated areas, including skateboarding, roller-skating, bicycling, scooters, and shopping carts (exceptions i.e. wheelchairs, walkers, and strollers)." Def.'s Mot. Dis., 5-6. The defendants also claim that the Library Policy provides that "[t]he Library reserves the right to limit the size and number of items brought into the Library." Id. Defendants contend, with no further elaboration, that these restrictions are "reasonable limitations on use" and are "narrowly tailored to avoid unnecessary interference with other patrons' use and enjoyment of the library." Id.

As a threshold matter, it may not be permissible to consider the Library Policy in deciding the Motion to Dismiss. Lu has neither referenced the Library Policy in, nor attached it to, his complaint. See Watterson, 987 F.2d at 3-4; see also Beddal, 137 F.3d at 16-17. It is not central to Lu's claims as opposed to the defendants' defenses to them. Moreover, even if the Library Policy is considered, dismissal of Lu's First Amendment claim is not

13

justified. See Blackstone Realty LLC v. Federal Deposit Ins. Corp., 244 F.3d 193, 197 (1st Cir. 2001) (to justify dismissal based on an affirmative defense "review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6) must 'leave no doubt' that the plaintiff's action is barred by the asserted defense")(internal quotation and citation omitted).

In this case, as other courts have implicitly found, the reasonableness of the Library Policy must be decided, on an evidentiary record, on a motion for summary judgment or at trial, rather than on a motion to dismiss. See Armstrong, 154 F. Supp. 2d at 69 (allowing plaintiff's motion for summary judgement on a challenge to library's admission policy); Brinkmeier, 1993 WL 248 201 at 2 (denying defendant's motion for summary judgment seeking to uphold an unwritten library policy that precluded access to patrons who "harasse[d] and/or intimidate[d] other library patrons or employees" although "conceptually inoffensive to the First Amendment," finding the policy was unreasonable because it was too "broadly stated and lack[ed] reasonable limitations as to the conduct it [sought] to prevent."); Kreimer, 958 F.2d at 1262-63 (upholding library rules on cross-motions for summary judgment). Indeed, the only two cases which defendants cite to support their Motion to Dismiss actually involved motions for summary judgment. See Neinast, 346 F.3d at 588; Kreimer, 958 F.2d at 1246. It would

14

also be premature to decide the reasonableness of the Library Policy in this case on the present record even if that policy could now be properly considered. See Blackstone Reality LLC, 244 F.3d at 197.

In addition, liberally construed, the complaint alleges that the Library Policy does not describe the Library's actual practice of discriminating against Lu and other homeless people. For example, Lu alleges that:

> (11) On information and belief, through custom and usage [the Library] has quietly excluded, ejected the undesirable, not just Lu.
>
> * * *
>
> (12) Defendants' actions imposes an undue burden on Lu's admission to [the Library] and constitutes constitutionality impermissible classifications of persons for the purpose of admitting patrons: homeless or not; patrons with belongings in tote bags (paper or plastic) only; patrons with belongings in a carriage; and patrons with belongings in suitcases.

Id. ¶¶10, 12. Lu also alleges that he was told that "homeless people cannot come in with their belongings." Id. ¶7(e). These allegations assert that the actual conduct of the Library's staff, as opposed to any possible facially reasonable written policy, violated his First Amendment right to access the Library. To the extent, if any, that Lu challenges the Library Policy, he asserts a plausible as applied challenge. Evidence is required to resolve any such challenge.

15

### 3.   The Equal Protection Claim

The foregoing analysis and conclusion is also applicable to Lu's claim that his Fourteenth Amendment right to equal protection has been violated.

> To plead a viable equal protection claim, a plaintiff must allege facts indicating selective treatment 'compared with others similarly situated . . . [was] based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'

Aponte-Torres, 445 F.3d at 57 (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001). A plaintiff's complaint must "identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiff was] 'singled . . . out for unlawful oppression.'" Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (citing Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)); see also Ayala-Sepulveda v. Municipality of San German, 671 F.3d 24, 32 (1st Cir. 2012) ("Some evidence of actual disparate treatment is a 'threshold requirement' of a valid equal protection claim.") (citing Estate of Bennett, 548 F.3d at 66)).

As described earlier, liberally construed, the complaint alleges that Lu and other homeless individuals have been selectively excluded from the Library based on their status, and

16

that this was done to inhibit the exercise of their First Amendment right to access to the Library. Lu generally describes the alleged experiences of other individuals. See Comp. ¶¶7, 12. If the equal protection claim was Lu's only claim, closer consideration of whether more specific allegations are necessary to survive the Motion to Dismiss might be appropriate. However, as explained earlier, Lu is a pro se litigant and has stated a viable First Amendment claim. Defendants will not be prejudiced by the continued litigation as well of the equal protection claim, which is a close corollary of the First Amendment claim.

Therefore, the court finds that Lu has alleged a plausible claim that his Fourteenth Amendment right to equal protection has been violated. Once again, the merit of this claim will have to be decided on a motion for summary judgment or at trial. Cf. Kreimer, 958 F.2d at 1269 (reversing the granting of a motion for summary judgment alleging an equal protection violation finding "that the record is devoid of any facts that support the court's determination that the Library acted with discriminatory intent" in enacting its policy.).

### 4.  The Due Process Claim

Lu does not state whether he is asserting a violation of his right to substantive due process, procedural due process, or both.

To state a viable substantive due process claim, Lu must allege facts that would permit a reasonable fact finder to conclude

17

that the challenged actions were so`egregious as to "shock the conscience." See County of Sacramento v. Lewis, 523 U.S. 833, 855 (1988); see also Gonzalez-Droz v. Gonzales-Colon, 660 F.3d 1, 16 (1st Cir. 2011)."To sink to this level, the challenged conduct must be 'truly outrageous, uncivilized, and intolerable.'" Gonzalez-Droz, 660 F.3d at 16 (quoting Hasenfu v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)). The protections afforded by the substantive component of the Due Process Clause are generally limited to "matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 510 U.S. 266, 272 (1994). Such matters are not implicated in the instant case. Nor, in any event, could defendants' alleged conduct be found to shock the conscience. See Gonzalez-Droz, 660 F.3d at 16.

"To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived him of that interest without constitutionally adequate process.'" Id. at 13 (quoting Aponte-Torres, 445 F.3d 50, 56 (1st Cir. 2006); see also Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The parties have not addressed the requirements of a procedural due process claim in their memoranda. Nor do they address whether the explanation of the Library Policy, and discussion of it that Lu alleges occurred, satisfies the requirements of due process, as the Sixth Circuit held in similar circumstances in Neinast. See, 346

18

F.3d at 597.

In addition, without consideration of the Library Policy, and perhaps other evidence, it is not clear whether the exclusion of Lu from the Library involved a random unauthorized act for which Lu would have to prove there was no adequate post-deprivation remedy. See Hudson v. Palmer, 468 U.S. 517, 531-533 (1984). Lu has not alleged that he has availed himself of the remedies provided by state law or that it would be futile to do so. See id. at 539 (O'Connor, J. Concurring); Mpala v. City of New Haven, No. 11-1724, 2013 WL 657649, at *3-*4 (D. Conn. Feb. 22, 2013); Lamoureux v. Haight, 648 F. Supp. 1169, 1175 (D. Mass. 1986). As explained below, Lu has alleged a plausible Massachusetts Civil Rights Act ("MCRA") claim, which may suggest the adequacy of state post-deprivation remedies if the Hudson doctrine applies.

In view of the fact that the parties have not adequately addressed the issue of whether a protected liberty interest is implicated or the proper framework for analyzing Lu's procedural due process claim, the Motion to Dismiss it is being denied without prejudice to further consideration on a motion for summary judgment.

## 5.    The Massachusetts Civil Rights Act Claim

With regard to the MCRA, Lu has stated a plausible damage claim for which relief can be granted. The MCRA prohibits among other things, an interference with any federal right by "threats,

19

intimidation, or coercion." M.G.L. c. 12, §11I; see also Davis v. Rennie, 264 F.3d 86, 111 (1st Cir. 2001).

As explained earlier, Lu's First Amendment right to access to the Library is at the heart of this case. Lu alleges that Hulme told him that neither he nor any other homeless person could "come in the Library with belongings." Comp. ¶7(e). Lu further alleges that "it was understood by all present . . . that if Lu did not comply then and there [by leaving the Library], a charge such as trespassing would be lodged against [him]." Id. ¶6. In Batchelder v. Allied Stores Corp., the SJC stated:

> A uniformed security officer ordered Batchelder to stop soliciting and distributing his political handbills. Though Batchelder objected, he complied. This was sufficient intimidation or coercion to satisfy the statute. [M.G.L. c. 12, §11I].

393 Mass. 819, 823 (1985). Lu's allegations are comparable to those in Batchelder. They are, therefore, sufficient to survive the Motion to Dismiss his MCRA claims.

C.   The Motion for a TRO

With his verified complaint, Lu has filed a Motion for TRO. He has not filed a memorandum of law as required by Rule 7.1(B)(1) of the Local Rules of the United States District Court for the District of Massachusetts. Nor does Lu specify the injunctive relief he seeks. The court infers that he request an order that he be allowed to enter the Library, with his cart, during the pendency of this case. Therefore, the court is addressing the Motion for a

TRO.

"Under this circuit's formulation, trial courts follow a four-part framework in determining whether the grant or denial of preliminary injunctive relief is appropriate. The district court considers: first, the likelihood that the party requesting the injunction will succeed on the merits; second, the potential for irreparable harm if the injunction is denied; third, the hardship to the nonmovant if enjoined compared to the hardship to the movant if the injunctive relief if denied; and fourth, the effect of the court's ruling on the public interest." Water Keeper Alliance v. U.S. Dept. Of Defense, 271 F.3d 21, 30 (1st Cir. 2001) (citing Ross-Simons of Warwick, Inc. V. Bacccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)).

As the Court of Appeals for the First Circuit has said on a number of occasions, the like likelihood of success on the merits is of primary importance. Ross-Simons, 102 F.3d at 16 (citing cases). It is the sine qua non for obtaining a preliminary injunction. Gately v. Commonwealth of Massachusetts, 2 F.3d 11, 12 (1st Cir. 1993).

In addition, where, as here, the injunction would require an affirmative act by the non-moving party, the "request warrants extra scrutiny." L.L. Bean, Inc. v. Bank of America, 630 F. Supp. 2d 83, 89 (D.Me. 2009). This is because courts "may be more reluctant to grant mandatory injunctions than prohibitory ones."

NBA Properties, Inc. v. Gold, 895 F.2d 30, 33 (1st Cir. 1990). Therefore, a mandatory injunction "should be granted only in those circumstances where the exigencies of the situation demand such relief." Massachusetts Coal of Citizens with Disabilities v. Civil Def. Agency, 649 F.2d 71, 76, n.7 (1st Cir. 1981).

In the instant case, Lu's allegations, liberally construed, state a plausible claim for the violation of his First Amendment rights, among others. They do not, however, establish the required reasonable likelihood of success on the merits. The Trustees assert that the Library Policy is a valid regulation of First Amendment rights and was fairly applied to Lu. The facts in every case are unique. However, such contentions have been proven to be correct in other cases. See e.g., Neinast, 346 F.3d at 592-598; Kreimer, 958 F.2d at 1250-70. Lu has offered no evidence to refute defendants' contention that the Library Policy will be proven to be a reasonable and valid limitation on the exercise of First Amendment rights. Nor are the allegations in his verified complaint sufficient to establish that Lu is likely to prove that a facially valid policy was applied in a discriminatory way against him.

The court recognizes that "the loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373-74 (1976). However, Lu has not shown that the balance of hardships favors him; that the public interest would be served by issuing the

22

requested TRO; or, most significantly, that he has a reasonable likelihood of succeeding on the merits of his case. Therefore, the Motion for TRO is being denied.

D.    Motions for Sanctions

As indicated earlier, in 2002, in another case, because of Lu's harassing conduct in filing frivolous claims against defendants associated with the Harvard School of Dental Medicine, this court ordered Lu not to file any further documents, in the United States District Court for the District of Massachusetts, relating to the claims in that case and also ordered Lu to attach that Order to any submission in this District Court in any case. See Mar. 29 2002 Order, Harvard School of Dental Medicine, No. 00-11492-MLW, ECF No. 49.  Lu failed to attach the 2002 Order to his submissions in this case.  Defendants have moved for sanctions in the form of its reasonable costs and attorneys fees in defending the instant action. They assert that Lu has filed at least 18 cases in the District Court, has frequently failed to attach the 2002 Order to his submissions, and has been undeterred by being ordered by Judge Reginald Lindsay to pay $500 - and paying - for multiple failures to comply with court orders.

Lu opposes the request for sanctions against him and asserts that defendants should be sanctioned under Federal Rule of Civil Procedure 11 for filing a baseless motion.  Lu's request for sanctions is without merit because the defendants had a proper

23

basis to contend that Lu violated the 2002 Order. Indeed, they are correct in their contention.

The question of whether Lu should be sanctioned for violating the 2002 Order and, if so, what sanction is appropriate, is more vexing. The disregard of court orders may constitute a criminal and/or civil contempt. If wilful, Lu could be fined or incarcerated for a violation. See United States v. Marquardo, 149 F.3d 36, 40-41 (1st Cir. 1998); United States v. Simmons, 215 F.3d 737, 741 (1st Cir. 2000). In addition, repeated violations of court orders may justify the dismissal of a case. See e.g., Mulero-Abreu v. Puerto Rico, 675 F.3d 88, 89 (1st Cir. 2012); Damiani v. Rhode Island Hospital, 704 F.2d 12, 16 (1st Cir. 1983).

However, in this case, Lu is homeless and evidently indigent. Therefore, it would be distracting, and perhaps unavailing, to consider now whether monetary sanctions should be imposed on him. In addition, he has plausibly stated claims that his constitutional rights have been violated by the defendants. It is not unjust that they incur the costs to date of litigating those claims.

However, Lu is hereby put on notice that a failure to obey any order or applicable rule in this case may result in sanctions, including possibly dismissal. See Damiani, 704 F.2d at 16; Mulero-Abreu, 675 F.3d at 89. It would be unfortunate if Lu's conduct in this case prompts its dismissal rather than a decision on the merits. That, however, will be determined by Lu's conduct.

24

Educated by the Motion to Dismiss, this court now views this case as presenting exceptional circumstances that justify the appointment of counsel for Lu if he would like to be represented by an attorney. See 28 U.S.C. §1915(e)(1); Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986). Appointing counsel to represent Lu would also reduce the risk that future orders will be disobeyed and the orderly progress of this case will be disrupted. Therefore, Lu is being ordered to report, by April 22, 2013, whether or not he requests that counsel be appointed to represent him in this case.

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiff's Motion for Temporary Restraining Order (Docket No. 2) is DENIED.

2. Plaintiff's Motion to Disqualify So Called Counsel (Docket No. 7) is DENIED.

3. Defendants George Hulme and Trustees of the Boston Public Library's Motion to Dismiss Plaintiff's complaint Pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED in part and ALLOWED in part. Specifically, the motion is allowed as to the claim of a violation of Lu's right to substantive due process under the Fourteenth Amendment of the United States Constitution, and denied as to the remaining claims.

4. Defendants George Hulme and Trustees of the Boston Public Library's Motion for Fees, Costs and Sanctions Against the

Plaintiff (Docket No. 13) is DENIED without prejudice.

        5.    Plaintiff's Opposition to Motion for Attorney's Fees and Cross-Motions for Sanctions and for Factual and Legal Proof of Attorney-Client Relationship (Docket No. 14) is DENIED.

        6.    Lu shall report, by April 22, 2013, whether or not he requests that counsel be appointed to represent him in this case. After the issue of whether Lu will be represented by counsel is resolved, the court will establish a schedule for the remainder of this case.

                                    UNITED STATES DISTRICT JUDGE